IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CLARICE ROBERTS on behalf of
RANDALL L. CLARK, deceased,

    Plaintiff,

v.   CASE NO. 4:08-cv-00163-MP-WCS

MICHAEL J ASTRUE,

    Defendant.

_____/

**O R D E R**

This matter is before the Court on Doc. 24, Report and Recommendation of the Magistrate Judge, which recommends that the decision of the Commissioner denying benefits be affirmed. The Magistrate entered the Report on March 12, 2009. Plaintiff has filed an objection to the Report at Doc. 25. For the reasons stated below, the Report and Recommendation will be adopted, and the decision of the Commissioner will be affirmed.

I.    Plaintiff's Objections.

In his objection, Plaintiff "specifically objects to any and all findings of fact and law contained throughout the Magistrate Judge's decision." Doc. 25 at 1. Plaintiff also "reasserts all of the arguments previously made in the initial brief (Doc. 19)." Id. The Court notes at the outset that under 28 U.S.C. § 636(b)(1), the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, in order to trigger *de novo* review, an objection must be specific; a party cannot simply raise a general objection to a magistrate's report and recommendation by reasserting by reference every argument in its initial brief. Nettles v. Wainwright, 677 F.2d 404,

410 n.8 (5th Cir. 1982) ("Frivolous, conclusive or general objections need not be considered by the district court.").[1]  Therefore, the Court has reviewed for clear error those portions of the Report to which Plaintiff has raised no specific objection.

Plaintiff does raises several specific objections.  The Court has completed a *de novo* review of the issues raised in each of Plaintiff's specific objections, as outlined below.

II.     Discussion.

   1.     *The ALJ's Rejection of Dr. Koberda's Opinion*.

Plaintiff argues that the evidence cited by the Magistrate as substantial evidence supporting the ALJ's rejection of Dr. Koberda's opinion that Plaintiff was disabled due to behavioral problems – good control of seizures, mildly abnormal EEG, and normal gait and balance – has no bearing on whether or not Plaintiff was disabled due to behavioral problems. Plaintiff argues further that Dr. Koberda's opinion was not conclusory and "is consistent with Dr. Bradley's deferral of Plaintiff to the treating neurologist for an opinion on the relationship of strokes, seizure activity, and mental functioning."  Doc. 25 at 2.

Plaintiff's objection is based on an incomplete characterization of the Magistrate's reasoning. As substantial evidence for rejecting Dr. Koberda's opinion that Plaintiff was disabled due to behavioral problems, the Magistrate noted that "the evidence of behavioral problems came only from Plaintiff and his mother, without specificity as to severity or frequency, not from Dr. Koberda's observations."  Doc. 24 at 18.  Also, although Dr. Koberda stated that Plaintiff

---

[1]Although the Fifth Circuit has since overruled Nettles, see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), Nettles remains binding precedent in the Eleventh Circuit because Douglass was decided after October 1, 1981, and was not a Unit B decision.  Jones v. Sec'y for Dep't of Corr., 131 Fed. Appx. 164, 166 n.3 (11th Cir. 2005).

was a "good candidate for disability" due to his stroke and seizures, he also stated that "he may be able to be involved in light duty employment like office type of job" in the future, "if he has no frequent seizures." R. 334.

The Magistrate also noted that Plaintiff had no history of treatment for behavioral problems and that no medical provider ever made objective findings that Plaintiff had behavioral problems. In fact, Dr. Bradley, the first examining psychologist, noted the following:

> [Plaintiff] was cooperative during the evaluation, and he appeared in good spirits. He made frequent jokes and humorous statements. His affect and mood were euthymic. He did not appear anxious or depressed. No evidence of panic was noted. He did not appear easily distracted by external stimuli (such as noises outside the room) and was able to concentrate adequately. He was able to answer questions without difficulty, and receptive and expressive language appeared intact.

R. 211. Dr. Bradley also found that Plaintiff "appeared to be a questionable informant regarding current ability to function." R. 212. She concluded that Plaintiff's mental status appeared to be essentially normal, that it was unclear "to what degree, if any, [Plaintiff's] 'strokes' have caused permanent damages to his cognitive functioning," that "there are no indications of significant deficits," and that "nothing in the interview or his presentation [suggests the presence] of a psychological disability that would prevent [Plaintiff] from attaining or maintaining employment." R. 214.

After reviewing the record, the Court agrees with the Magistrate's analysis. Dr. Koberda's opinion was not based on her own observations and was contradicted by other evidence in the record. Therefore, substantial evidence supports the ALJ's conclusion that there was no support in the record for Dr. Koberda's opinion.

2.  *The ALJ's Credibility Determination.*

Even though the ALJ found based on objective medical evidence that Plaintiff did not suffer from significant and limiting behavioral problems, Plaintiff argues that the ALJ erred by failing to consider whether Plaintiff's subjective claims concerning the limiting effects of his behavioral problems were credible. The Eleventh Circuit has established a three part "pain standard" that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once this test is satisfied, the ALJ must evaluate the credibility of the claimant's subjective complaints. "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Wilson, 284 F.3d at 1225 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." Wilson, 284 F.3d at 1225 (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). Those reasons must be based on substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

Here, Plaintiff argues that the above-cited pain standard should have been applied to Plaintiff's subjective complaints of behavioral problems due to seizures. He argues that, under the three-part test in Holt, Plaintiff established a claim of disability based on his testimony of

behavioral problems by showing that there was evidence of permanent brain damage caused by seizures and that, as supported by statements in Dr. Koberda's January 10, 2007, report (R. 135, 289), this objective medical condition could reasonably be expected to give rise to the alleged behavioral problems. Therefore, Plaintiff argues, the ALJ should have considered the credibility of Plaintiff's subjective complaints regarding the limiting effects of his behavioral problems.

Under the standard cited by Plaintiff, the ALJ would have to first examine Plaintiff's claims of behavioral problems under the "pain standard," which the ALJ did not specifically do, and then evaluate the credibility of Plaintiff's subjective complaints concerning the limiting effects of his behavioral problems by considering "such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications, and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F.Appx. 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(iv)); see also 20 C.F.R. § 416.929(c)(3)(i)-(vii) (providing the same).

In determining Plaintiff's residual functional capacity, the ALJ acknowledged that, "[s]ince having the strokes, the claimant notes that his temper is short and that he cannot stand any pressure. He also admits to being belligerent." R. 22. The ALJ then found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Id. In this portion of the ALJ's decision, the ALJ did not specifically address what evidence it was relying on to conclude that Plaintiff's alleged behavioral problems were not significant and limiting – i.e., that Plaintiff's subjective

complaints concerning their persistence and limiting effects were not credible. The only other reference in this part of the ALJ's decision to Plaintiff's complaints of behavioral problems is the ALJ's finding that there was "no support for Dr. Koberda's opinion [that] the claimant's occasional behavioral problems and aggressive behavior preclude all work." R. 22.

Nevertheless, the Magistrate concluded that the ALJ's failure to specifically address the credibility of these complaints is irrelevant, because the ALJ already concluded that Plaintiff did not suffer from significant and limiting behavioral problems. The Magistrate's conclusion refers to the portion of the ALJ's opinion rating the severity of mental impairments at steps two and three of the sequential evaluation process. See R. 19-20. There, the ALJ found "no limitation in activities of daily living, only mild limitations in social functioning, only mild deficiencies in concentration, persistence or pace, and no episodes of de-compensation." R. 20. In making this finding, the ALJ noted that Plaintiff "does not seek any on-going mental health treatment and a psychological evaluation revealed no significant issues of mood disruption, anxiety, or social anxiety, as well as the ability to interact easily." R. 19. The ALJ noted that the described limitations were not a residual functional capacity assessment; rather:

> the mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 o f the Listing of Impairments (SSR 96-8p). Accordingly, the undersigned has translated the above "B" criteria findings into work-related functions in the RFC assessment below.

R. 20.

It is clear from the ALJ's decision that the ALJ considered Plaintiff's subjective complaints of behavioral problems at steps two and three and found them to be less severe than claimed. To avoid ambiguity, it would have been preferable for the ALJ to repeat this analysis

in the residual functional capacity portion of his decision, but the ALJ's lack of redundancy does not compel remand. The ALJ's finding that Plaintiff suffered from no severe or limiting behavioral problems was based not only on Dr. Bradley's psychological evaluation but also Plaintiff's failure to seek mental health treatment. There is substantial evidence in the record to support this finding. The ALJ committed no error.

      3.     *The ALJ's Determination of Transferability of Skills*.

Plaintiff objects to the Magistrate's conclusion that the ALJ did not err by finding that Plaintiff could perform the skilled or semiskilled occupations of animal caretaker, poultry breeder, order taker, and surveillance systems monitor. Plaintiff argues that the ALJ could not validly make this determination without first identifying which skills Plaintiff acquired from past work experience that were transferable to these occupations. To the extent the above four occupations were identified by the vocational expert as being skilled and semiskilled, Plaintiff's reading of the law is correct; the Court hereby rejects the Report and Recommendation to the extent it is inconsistent with this conclusion of law.

> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision. Evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included (the regulations take administrative notice only of the existence of unskilled sedentary, light, and medium jobs in the national economy). This evidence may be [vocational specialist] statements based on expert personal knowledge or substantiation by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d). It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

SSR 82-41.

*Case No: 4:08-cv-00163-MP-WCS*

However, "transferability [of skills] will be decisive in the conclusion of 'disabled' or 'not disabled' in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work." S.S.R. 82-41.  In his decision, the ALJ held that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."  R. 23 (citing S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).  That holding was apparently based on the ALJ's finding that Plaintiff could perform other unskilled work that existed in significant numbers in the national economy.

Because the ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of the light work level were impeded by the limitations described in Plaintiff's residual functional capacity, the ALJ relied on the testimony of the vocational expert to determine whether Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  R. 23-24.  The ALJ noted that the vocational expert testified that a person with Plaintiff's age, education, work experience, and residual functional capacity "would be able to perform the requirements of representative occupations such as an animal [caretaker] (DOT#410.675-010, 8.000 jobs statewide), a poultry breeder (DOT#411.161-014, 1,000 jobs statewide), a surveillance systems monitor (DOT#379.367-010, 1,200 jobs statewide), and order clerk (DOT#249.362-026, 12,000 jobs statewide)."  R. 23-24.

As Plaintiff correctly points out, however, the vocational expert testified that three of the above four jobs are either skilled or semiskilled.  See R. 379-82.  Therefore, in holding that the

transferability of skills was immaterial, the ALJ erred to the extent he relied on Plaintiff's ability to perform these jobs. In her memorandum in support of her complaint, Plaintiff argues, "The fourth job, surveillance system monitor, was noted to be unskilled and semiskilled, with 1,200 of both types of jobs existing in Florida. (R. 380-81). The VE did not state how many of the 1,200 were unskilled versus semiskilled; therefore, it cannot be demonstrated that a significant number of unskilled jobs exist in this job category." Doc. 19 at 19.

The Court disagrees with Plaintiff's reading of the record. At the administrative hearing, the following dialogue took place between the ALJ and the vocational expert:

> ALJ: Any sedentary jobs within [the first] hypothetical?
>
> VE: Yeah, there would be a lot of sedentary jobs that would be potential. One would be the surveillance clerk. Let me see if I can find that for you.
>
> ALJ: Are you talking about *surveillance system monitor*, that kind?
>
> VE: *Surveillance system monitor, 379.367-101. It's sedentary with an SVP of two.*
>
> ALJ: So it's - -
>
> VE: There are other places [where] *similar jobs are SVP of three*. It depends upon the level.
>
> ALJ: Uh-huh. How many of those *surveillance system monitor* jobs are there in Florida or in the nation?
>
> VE: I believe there are about 1,200 in Florida.

R. 380-81 (emphases added). The Court does not believe the vocational expert's testimony is ambiguous. The vocational expert testified that the occupation of surveillance system monitor, DOC #379.367-010, has an SVP of 2 (unskilled), that *similar* jobs have an SVP of 3 (semiskilled), and that there are 1,200 surveillance system monitor jobs in Florida. Standing alone, the vocational expert's testimony constitutes substantial evidence for the ALJ's decision

that Plaintiff could perform other work that exists in significant numbers in the national economy.  Therefore, the ALJ's failure to specifically identify which of Plaintiff's skills from past work experience were transferrable to the other three occupations is not fatal to the validity of the ALJ's decision.

Finding no other reason to reject the recommendation of the Magistrate, it is hereby

**ORDERED AND ADJUDGED:**

The Report and Recommendation of the Magistrate (Doc. 24) is ADOPTED and incorporated herein to the extent it is consistent with this order.  The decision of the Commissioner denying benefits is AFFIRMED.

**DONE AND ORDERED** this   *24th* day of April, 2009

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge